IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–00753–MDB

DEACON S LABONTE,

     Plaintiff,

v.

WELLS FARGO AUTO, and
BROADWAY FORD HYUNDAI, INC.,

     Defendants.

---

**ORDER**

---

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 39) and Defendant Broadway Ford Hyundai, Inc.'s ("Broadway Ford") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 40) (collectively, the "Motions"). Plaintiff has responded in opposition to each Motion (Doc. Nos. 41; 42) and Defendants have replied in support (Doc. Nos. 43; 44).[1] After considering the Motions, briefing, and applicable law, the Court **ORDERS** that the Motions are **GRANTED**.

**SUMMARY FOR *PRO SE* PLAINTIFF**

     The Court is granting Defendants' Motions and dismissing this case because the allegations fail to state any plausible claims for relief against Wells Fargo, and even though you

---

[1] Plaintiff also filed sur-replies in opposition to the Motions. (Doc. Nos. 45; 46.) In light of his *pro se* status, the Court accepted and considered these filings. (Doc. No. 47.)

were located in Colorado during the vehicle purchase, and the vehicle was shipped to Colorado, these contacts are insufficient to establish personal jurisdiction over Broadway Ford. This is only a summary of the Court's Order, which can be read in full below.

## BACKGROUND

This case arises out of Plaintiff's 2022 purchase of a 2020 Dodge Challenger (the "Challenger"). (*See generally* Doc. No. 36.) Plaintiff alleges that on February 6, 2022, he inquired about the Challenger, through a listing by Broadway Ford on the website Autotrader.com. (*Id.* at ¶ 9.) Plaintiff lives in Colorado and Broadway Ford is located in Wisconsin. (*Id.* at ¶¶ 1, 3.) Plaintiff says he negotiated with Broadway Ford via phone and email and eventually came to an agreement to purchase the Challenger. (*Id.* at ¶ 10.) Plaintiff signed the final agreement sent by Broadway Ford on February 8, 2022. (*Id.* at ¶¶ 11–12.) Broadway Ford extended Plaintiff credit in the amount of $39,207.00 to finance the purchase. (*Id.* at 39 (exhibit D).) The Challenger was "shipped" to Plaintiff in Colorado. (*Id.* at ¶ 13.)

Plaintiff alleges that the loan documents provided to him violated the Truth in Lending Act ("TILA"). (*Id.* at ¶¶ 16–32.) Specifically, Plaintiff contends that "some charge" that was factored into his APR, "went undisclosed." (*Id.* at ¶¶ 17–23.) Plaintiff says he knows this because the APR, 3.89%, was "not divisible equally by 1/8th." (*Id.* at 22.) Plaintiff appears to allege that this undisclosed fee was a "yield spread premium" ("YSP"), of an "undeterminable" amount "in the range of .39% to .89%." (*Id.* at ¶¶ 25–28.)

Broadway Ford allegedly assigned the contract to Wells Fargo on February 8, 2022. (*Id.* at ¶ 15.) Plaintiff says, "soon thereafter, Wells Fargo assigned the loan to CPS Auto Receivables Trust 2022-C, affectively (sic) losing ownership interest in the collateral of the ... Challenger."

(*Id.* at ¶ 29.) Plaintiff alleges that despite Wells Fargo's lack of ownership interest in the Challenger, it "attempted to repossess" the vehicle on October 1, 2024. (*Id.* at ¶ 30.) Plaintiff alleges that he paid $ 3230.24 to "reinstate a loan not belonging to Wells Fargo" on October 18, 2026. (*Id.* at ¶ 31.)

Plaintiff brings eight claims:

- Claim 1: A request for a declaratory judgment that the Challenger loan was "destroyed" by Wells Fargo;

- Claim 2: Conversion;

- Claim 3: Breach of a fiduciary duty;

- Claim 4: Fraudulent misrepresentation;

- Claim 5: Unjust Enrichment;

- Claim 6: TILA violation;

- Claim 7: Colorado Consumer Protection Act ("CCPA") violation; and,

- Claim 8: Colorado Uniform Consumer Credit Code ("UCCC") violation

(*Id.* at ¶¶ 33–69.)[2] The Amended Complaint does not specify which claim is brought against which Defendant. (*Id.*) Thus, the Court presumes each claim is brought against both Defendants.

Defendants move to dismiss all claims. They argue Plaintiff fails to satisfy the requirement under Federal Rule of Civil Procedure 8 that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that, accordingly,

---

[2] Plaintiff also says he is entitled to injunctive relief but does not specify the specific relief he seeks. (Doc. No. 36 at ¶¶ 70–73.) Accordingly, the Court does not consider this request.

Plaintiff fails to state any claims under Rule 12(b)(6). (Doc. Nos. 39; 40.) Additionally, Broadway Ford argues the Court lacks personal jurisdiction over it. (Doc. No. 40 at 2–7.)

**LEGAL STANDARD**

**I.    Federal Rule of Civil Procedure 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) authorizes the dismissal of a complaint for lack of personal jurisdiction. When a defendant files a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over that defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). Where, as here, the Court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing to defeat the motion. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citation omitted). The plaintiff "must make this showing with respect to each of the claims alleged." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (citation omitted). In evaluating whether the plaintiff has made a *prima facie* showing that personal jurisdiction exists, the Court accepts the well-pleaded allegations of the complaint as true. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

**II.    Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and view these allegations in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). However, the "burden [remains] on the plaintiff to frame a 'complaint with enough factual matter ... to

suggest' that [they are] entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). Ultimately, the Court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.    *Pro se* **Plaintiff**

In applying the above principles, this Court is mindful Plaintiff proceeds *pro se* and thus affords his papers and filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the Court cannot and does not act as his advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

### ANALYSIS

### I.    **Personal Jurisdiction over Broadway Ford**

"Under Colorado law, this Court may exercise personal jurisdiction to the full extent of the Due Process Clause of the Fourteenth Amendment." *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1197 (D. Colo. 2002). "To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have 'certain minimum contacts [with the jurisdiction] ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *International Shoe Co. v.*

*State of Washington*, 326 U.S. 310, 319 (1945)). This minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). Plaintiff bears the burden of establishing personal jurisdiction via *prima facie* showing. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

### A.  General Jurisdiction

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted). A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state via "continuous and systematic" contacts. *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 & n. 9 (1984). "A corporation is subject to general jurisdiction in 'its place of incorporation and principal place of business.'" *Geiger v. Chubb Indem. Ins. Co.*, 2024 WL 809896, at *3 (D. Colo. Feb. 27, 2024) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

Here, other than stating Broadway Ford is "located" in Wisconsin, the Amended Complaint does not make any specific allegations as to Broadway Ford's place of incorporation or principal place of business. (*See* Doc. No. 36 at ¶¶ 3, 10; *see generally id.*) Accordingly, Plaintiff has not made a *prima facie* showing of general jurisdiction in Colorado. *See Old Republic Ins. Co.*, 877 F.3d at 903. Moreover, Broadway Ford has submitted the affidavit of David Cuene, one of its "owners," who avers that the business is incorporated in, and has its principal place of business in, Wisconsin. (Doc. No. 40-1 at ¶¶ 2–3); *Wenz v. Memery Crystal*,

55 F.3d 1503, 1505 (10th Cir. 1995) (noting that a defendant may submit competing affidavits in a Rule 12(b)(2) motion). Accordingly, the Court finds it does not have general jurisdiction over Broadway Ford.

### B. Specific Jurisdiction

To establish specific jurisdiction over Broadway Ford, Plaintiff must first show that Defendants "purposefully directed" their activities towards Colorado. *Dental Dynamics*, 946 F.3d at 1229. To do this, Court "must examine the quantity and quality" of each Defendant's contacts with Colorado. *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 614 (10th Cir. 2012). At bottom, the Court asks whether the defendant "should reasonably anticipate being haled into court" in Colorado. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the answer to this question is yes, the Court then considers whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 105 (1987). "This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over the defendant is 'reasonable' in light of the circumstances of the case." *Baldwin v. Athens Gate Belize, LLC*, 2019 WL 4674332, at \*2 (D. Colo. Sept. 24, 2019) (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 105.

In considering personal jurisdiction in connection with an e-commerce fact pattern, courts in this district generally apply the test discussed by the Tenth Circuit in *Shrader v. Biddinger*, which says specific jurisdiction is appropriate when "a person outside of the State ... (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential

cause of action cognizable in the State's courts." 633 F.3d 1235, 1240 (10th Cir. 2011) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir. 2002); *see, e.g.*, *Baldwin*, 2019 WL 4674332, at *2–4.

Under *Shrader*, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." 633 F.3d at 1241. Accordingly, Broadway Ford's Autotrader.com listing accessible in Colorado does not, in and of itself, establish specific jurisdiction. However, Plaintiff alleges greater contact with Broadway Ford, beyond the listing. He alleges that while located in Colorado, he negotiated directly with Broadway Ford over phone and email, and signed the contract. (Doc. No. 36 at ¶¶ 9–12.) He also alleges Broadway Ford was involved in arranging the vehicle's shipment to Colorado.[3] (*Id.* at ¶ 13.) Moreover, Plaintiff seems to imply that Broadway Ford knew he was located in Colorado during the negotiation and consummation of the agreement—at least insofar as Broadway Ford arranged for the Challenger to be shipped to Colorado. (*Id.*)

At least one court in this Circuit has considered a similar fact pattern and declined to find specific jurisdiction over the defendant. In *Espat v. Wissenback*, the plaintiff-buyers initiated contact with the defendant-sellers via Autotrader.com; the defendant-seller knew the plaintiffs

---

[3] Plaintiff says the vehicle was shipped to Colorado "via Broadway Ford's auto transport company." (Doc. No. 36 at ¶ 13.) It is unclear whether Plaintiff is alleging that Broadway Ford has its own "transport company" or whether Plaintiff is alleging Broadway Ford merely contracted with a third party for shipment. For its part, Broadway Ford denies having any in-house shipping company. (Doc. No. 40 at 5, n.2.) And, in line with Broadway Ford's statement, Plaintiff's response seems to confirm that Broadway Ford merely contracted with a third party for shipment, saying that Broadway Ford "*arranged* for vehicle shipment to Colorado." (Doc. No. 41 at ¶ 3.)

resided in New Mexico and communicated with the plaintiffs via telephone and email while plaintiffs were in New Mexico. 2015 WL 11111295 (D.N.M. Feb. 27, 2015). There, like here, the defendant-seller assisted with transportation to the plaintiff-buyer's home state. *Id.* Nevertheless, the court declined to find personal jurisdiction, concluding that "[t]he internet-based sale of [a] [v]ehicle—a single transaction between the parties—is insufficient to establish that Defendants purposefully directed their activities toward the forum state." *Id.* at *5. Key to that holding was the conclusion that the plaintiff-buyers initiated the contact between the parties, and the defendant merely communicated with the plaintiffs in response to their inquiries, rather than purposefully solicit plaintiffs' business or otherwise targeted the forum state. *Id.* at *6; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (rejecting specific jurisdiction in connection with the sale of a vehicle via eBay.com where the plaintiff and defendant communicated via email to arrange for delivery of the vehicle from the seller's state to the forum state, because "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in [the forum state]").

The Court finds the *Espat* holding persuasive and concludes the same here. Like in *Espat*, Plaintiff initiated contact with Defendant. (*See* Doc. No. 36 at ¶ 9 ("On February 6, 2022, Plaintiff inquired about a 2020 Dodge Challenger through Autotrader.com, which forwarded his inquiry to [Broadway Ford]").) Additionally, Plaintiff offers no allegations to demonstrate that Broadway Ford targeted the Colorado market. (*Id.* at ¶¶ 9–13.) Moreover, Broadway Ford's supporting affidavit unequivocally states that it did not. (Doc. No. 40-1 at ¶ 7 ("[Broadway Ford] does not solicit business in Colorado.")); *see Sea Eagle Ford, LLC v. Texas Quality Well Serv., LLC*, 2018 WL 4352011, at *3 (D. Colo. Sept. 12, 2018) (noting that for specific jurisdiction

9

defendant must have "'purposefully exploited the [Colorado] market' or otherwise targeted the state."); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). And though Broadway Ford's role in arranging shipment to Colorado makes this a closer question, a single delivery into the forum—made in service of a transaction that the buyer himself initiated, and to the state that the buyer himself requested—does not, without more, demonstrate that Broadway Ford purposefully availed itself of the privilege of doing business in Colorado. *See Espat*, 2015 WL 11111295; *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) ("Significantly, the relationship between a defendant and the forum State must arise out of contacts that the defendant himself creates with the forum State[.]"). In short, Plaintiff's allegations fail to establish that Broadway Ford's contacts with Colorado are sufficient for specific jurisdiction. *See Sea Eagle Ford, LLC,* 2018 WL 4352011, at *2–4 (rejecting specific jurisdiction where communications related to negotiating the contract, and the plaintiff's signing of the contract, took place in Colorado but there were "no factual allegations ... that [the] defendant ha[d] contacts in Colorado other than its contractual relationship with [the] plaintiff").

## II.    Failure to State a Claim

### A.  Claim 1: Declaratory Judgment

Plaintiff's first claim seeks a declaratory judgment stating that the Challenger loan was "stripped from Wells Fargo by placing it with CPS Auto Receivables trust 2022-C ("CPS")," and "in fact destroyed by placing it into the Trust." (Doc. No. 36 at ¶ 34.) However, there are no allegations suggesting the assignment of the loan was improper. *See* Wis. Stat. Ann. §

422.409(1)[4] (presuming the validity of a note assignment while creating procedural rules around borrower repayment in the case of reassignment); (*see also* Doc. No. 36 at 43 (saying [t]he seller may assign this contract").) Moreover, the securitization of a loan does not extinguish a barrower's obligations under the loan. *See Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) ("[S]ecuritization of a note does not alter the borrower's obligation to repay the loan[; it] is a separate contract, distinct from the borrower's debt obligations under the note." (quoting *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014))). Thus, there is no basis for the Court to declare that the Challenger loan was "stripped" from Wells Fargo or "destroyed" based on its transfer and securitization.

In his response, Plaintiff pivots and argues that this claim is predicated on Wells Fargo's attempt to repossess the Challenger after it had transferred the loan. (Doc. No. 42 at ¶¶ 3–4.) Plaintiff argues the repossession attempt was "without legal authority" due to the reassignment. (*Id.* at 3.) A responsive pleading cannot serve as a substitute for allegations in a complaint. *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) ("Plaintiff ... cannot amend h[is] complaint by adding factual allegations in response to Defendant's motion to dismiss."). But even if it could, the allegations are entirely disconnected from the declaration Plaintiff seeks, and insufficient to state a claim.

### B. Claim 2: Conversion

---

[4] The loan agreement specifies that Wisconsin law governs the contract. (*See* Doc. No. 36 at 39, 52, 61.) "Colorado generally recognizes contractual choice of law provisions," and no party has argued against the application of Wisconsin law. *Brown v. Fryer*, 2013 WL 1191405, at *2 (D. Colo. Mar. 22, 2013). The Court will thus apply substantive Wisconsin law to Plaintiff's state law claims. The Court notes that the outcome would not change if Colorado law was applied to all claims.

Plaintiff brings a claim for conversion, stating, "[t]he Defendants took Plaintiff[']s Auto Loan and turned it into a draft and converted that tangible property to Defendant['s] own possession and use." (Doc. No. 36 at ¶ 37.) The Court cannot make out what this statement means, raising Rule 8 concerns. In his responsive briefing, Plaintiff clarifies that this claim is predicated on Wells Fargo accepting Plaintiff's $3230.24 reinstatement payment after the repossession attempt, even though Wells Fargo had transferred the loan to CPS. (Doc. No. 42 at ¶ 5.) Even reading his pleadings liberally and drawing all inferences in Plaintiff's favor, the allegations do not support a viable conversion claim.

"The elements of conversion are: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property." *H.A. Friend & Co. v. Pro. Stationery, Inc.*, 720 N.W.2d 96, 100 (Wis. Ct. App. 2006). Plaintiff does not allege Wells Fargo took or controlled his property without his consent. Instead, Plaintiff appears to allege that he voluntarily paid Wells Fargo to reinstate the loan, but objects to Wells Fargo collecting the money on CPS's behalf. But nothing in the Amended Complaint suggests Wells Fargo failed to reinstate the loan or apply Plaintiff's payment to the loan's balance. (*See generally* Doc. No. 36.) Thus, Plaintiff doesn't plausibly claim any interference with his property rights. Plaintiff does not make any other allegations that could reasonably support a conversation claim and withstand the instant Rule 12(b)(6) challenge.

### C.  Claim 3: Breach of a Fiduciary Duty

Next, Plaintiff contends Wells Fargo breached its fiduciary duty by allegedly failing to include all necessary information in the Challenger's loan documents. (Doc. No. 36 at 39–43.)

"The elements of a claim for breach of a fiduciary duty are: (1) the defendant owes a fiduciary duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach of the duty caused the plaintiff's damages." *Est. of Sheppard ex rel. McMorrow v. Specht*, 824 N.W.2d 907, 910 (Wis. Ct. App. 2012).

This claim fails on the first element because Wells Fargo did not owe Plaintiff a fiduciary duty. A standard lending relationship, without more, does not create a fiduciary relationship between borrower and lender. *See Karl v. United States*, 2023 WL 4762827, at *5 (W.D. Wis. July 26, 2023) ("A typical lending agreement does not constitute a formal commitment that the lender will act for the borrower's benefit."). Plaintiff's responsive arguments do not persuasively argue otherwise, and his allegations are insufficient to plead a fiduciary duty.

### D.  Claim 4, 6, & 7: Fraudulent Misrepresentation, TILA Violation, & CCPA Violation

"To succeed on a fraudulent misrepresentation claim, a plaintiff must show: (1) a false representation of fact; (2) made with intent to defraud and for the purpose of inducing another to act upon it; and (3) actual inducement of another to rely and act upon that representation, causing injury or damage." *Bartz v. Edmonds*, 781 N.W.2d 550 (table), *4 (Wis. Ct. App. 2010) (citing *Lundin v. Shimanski,* 368 N.W.2d 676 (1985)). Moreover, "[t]o satisfy Rule 9(b), the party alleging fraudulent misrepresentation 'must state with particularity the circumstances constituting fraud.'" *Boyland Auto Grp. III LLC v. Boyland*, 691 F. Supp. 3d 917, 922 (E.D. Wis. 2023) (quoting Fed. R. Civ. P. 9(b)).

This claim is predicted on Wells Fargo's alleged failure to disclose the purported YSP in connection with the Challenger loan. (Doc. No. 42 at 4 (saying Defendants committed fraudulent misrepresentation "[b]y omitting the YSP and/or upcharge from TILA disclosures").) Courts

13

have consistently held, however, that TILA does not require a lender to break out the components of a finance charge to specifically disclose the YSP factored into the APR. *See Mendoza v. Lithia Motors, Inc.*, 2018 WL 1513650, at *4 (D. Or. Mar. 27, 2018) ("[C]ourts have unambiguously held that "TILA does not require a lender to break down the components of the finance charge to disclose the separate existence of a yield spread premium."" (quoting *Willis v. Bank of America Corp.*, 2014 WL 3829520, at 16 (D. Md. 2014))); *see, e.g.*, *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 693 (Ill. Ct. App. 2005); *Bassett v. Ruggles*, 2010 WL 1525554, at *14 (E.D. Cal. Apr. 15, 2010).

Further, Plaintiff does not allege that the APR he was quoted failed to include the YSP, or that he was secretly charged the YSP in addition to the APR he was quoted. He merely complains that he was not specifically made aware of the YSP's existence within the APR.[5] (*See* Doc. No. 36 at ¶¶ 21–23 (alleging that because the APR was not "divisible equally by 1/8," Plaintiff was aware that an "upcharge" was included in the rate).) Because TILA imposed no such disclosure obligation, Plaintiff cannot establish that Defendants made a false representation of fact or acted with intent to defraud. The fraudulent misrepresentation claim therefore fails.

---

[5] In his sur-reply to Wells Fargo, Plaintiff attempts to save his claim by contending, "[w]hile TILA may not require itemization, the omission here rendered the disclosed finance charge inaccurate." (Doc. No. 46 at ¶ 5.) But this is not what he alleges in the Amended Complaint. (*See* Doc. No. 36 at ¶¶ 18–28); *see also Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) ("Plaintiff ... cannot amend h[is] complaint by adding factual allegations in response to Defendant's motion to dismiss."). And even if he had alleged it, this conclusory allegation, without more, is insufficient to withstand a Rule 12(b)(6) challenge.

Plaintiff's TILA claim fails for the same reason. The claim rests entirely on the theory that Wells Fargo was required to itemize the YSP.[6] Moreover, Plaintiff's CCPA claim, which is predicated on a TILA violation, also fails.[7] (*See* Doc. No. 36 at ¶ 62 ("A violation of the TILA is a violation of the CCPA .... Failure to comply with the TILA requirements leads to deceptive or unfair conduct in a way that harmed the consumer and triggers a claim under the ["CCPA"]"); Doc. No. 41 at ¶ 18 ("The CCPA claim is tied to the TILA violation, which is adequately pled.").)

### E. Claim 5: Unjust Enrichment

"To establish a claim for unjust enrichment, a plaintiff must prove three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Kelly v. Cole*, 906 N.W.2d 184 (table), *3 (Wis. Ct. App. 2017) (internal quotation marks omitted). "The doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Con'l Cas. Co. v. Wisconsin Patients Comp. Fund*, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991); *see also Huff v. Verquer*, 2025 WL 2606704, at *7 (D. Colo. Sept. 9, 2025) (saying unjust enrichment is a theory of "quasi-contract" law and that the doctrine "do[es] not fit every

---

[6] Moreover, the Court notes that Plaintiff's TILA claim is likely time-barred under its one-year statute of limitation, which began running at the time of the loan agreement. *See Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1257 (D. Colo. 2004) ("[A]ctions [under the TILA] for statutory and actual damages must be brought within one year from the date of the violation.") This case was initiated nearly three years after Plaintiff purchased the Challenger, and no basis for equitable tolling is apparent.

[7] Additionally, the Court notes that under the loan agreement, Wisconsin law applies, seemingly rendering the CCPA inapplicable. *See supra* n.4.

fact pattern" (citing and quoting *Purser v. Gilliland*, 2024 WL 5276679, at \*9 (D. Colo. Nov. 21, 2024))).

Plaintiff contends that Wells Fargo was unjustly enriched because it "kept the YSP and gave nothing in return." (Doc. No. 26 at ¶ 55.) This claim fails for two reasons. First, and based on Plaintiff's own allegations, the claim is plainly tethered to the loan agreement, rendering the doctrine of unjust enrichment, inapplicable. Second, to the extent the claim is simply another vehicle for challenging defendants' failure to itemize the YSP in the APR disclosure, it fares no better as an unjust enrichment claim—the Court has already determined that no such disclosure was required. (*See supra* at 13–14.)

### F.  Claim 8: Colorado UCCC Violation

Finally, Plaintiff says Wells Fargo violated Colorado's UCCC because it "engag[ed] in deceptive practices" by "[f]ailing to disclose the YSP." (Doc. No. 36 at ¶¶ 66–67 (citing Colo. Rev. Stat. 5-3-301, 303, 304.)

This claim fails for several reasons. First, Wisconsin, not Colorado, law applies to claims related to the loan agreement. *See supra* at n.4. Second, the Colorado UCCC is subject to a one-year statute of limitations, *see* Colo. Rev. Stat. Ann. § 5-5-202(5) ("No action pursuant to this section may be brought more than one year after the date of the occurrence of the violation."), and this case was brought nearly three years after Plaintiff purchased the Challenger. Third, as previously noted, TILA does not require a lender to specify the YSP being included in an APR

(*see supra* at 13–14), and Plaintiff's citations to the UCCC do not support the proposition that Colorado law adds such a requirement.[8]

<b>CONCLUSION</b>

For the foregoing reasons it is **ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 39) is **GRANTED** and the claims against Wells Fargo are dismissed with prejudice.[9] It is further

**ORDERED** that Defendant Broadway Ford Hyundai, Inc.'s ("Broadway Ford") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 40) is **GRANTED** and the claims against Broadway Ford are dismissed without prejudice.[10]

The Clerk of Court is directed to close this case.

Dated this 30th day of March, 2026.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[8] In fact, the UCCC expressly incorporates TILA's disclosure requirements into its provisions. *See* Colo. Rev. Stat. § 5-3-101 ("The creditor shall disclose to the consumer to whom credit is extended with respect to a consumer credit transaction the information, disclosures, and notices required by the federal "Truth in Lending Act"... and any regulation thereunder.").

[9] Though dismissal of claims pursuant to Rule 12(b)(6) is generally without prejudice, "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

[10] "A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).